On to our final argument, calendared for today, Garding v. Montana Department of Corrections, Case Numbers 23-35272 and 23-35327. May it please the court. My name is Roy Brown. I'm an assistant attorney general and I'm representing the Montana Department of Corrections. I will reserve five minutes for rebuttal. This court should reverse the federal district court because the Montana Supreme Court reasonably applied Strickland and determined that Striano did not provide ineffective assistance. This court should otherwise deny Garding's claims. First, this court has jurisdiction pursuant to Calderon v. Moore. Second, as if... In terms of the real-world consequences, if we were to agree with you and to reverse, what would happen? Would the current proceedings be vacated and the prior conviction be reinstated or what's your understanding of what would happen logistically? Well, all this state is asking for this court to do is to reverse the judgment of the federal district court and the state court will give effect to that judgment. Under EGLES, reversal undoes what the habeas court did and that's the extent of the remedy that the state is asking. There will be a new trial no matter what? No, your honor. Reversal undoes the right... This is why the state is appealing because it will allow the state to not have to pursue retrial. Because the original conviction would be reinstated? Correct. So the original conviction is gone, but you say that if we reverse the district court, you can go back to the state court and the state court will... Reinstate the conviction, correct. And it's up to the state as a separate sovereign to make that, to give effect to this court's judgment. Assuming that you lose here, just assume, may or may not happen. Why would you pursue the second trial when the likelihood of conviction now that she I'm sure is going to present to the professional reconstruction evidence, the likelihood of conviction is very low, or if she's convicted, I doubt you're going to get a sentence longer than what she's already served. And your honor, that's a matter of strategy for the county attorney's office. Yeah, I'm saying what's going on here. And I can appreciate that, your honor. But the state would disagree with you in the sense that this evidence, crash reconstruction evidence, was ever exculpatory or would it be so compelling to... It isn't exculpatory that the state totally changed its theory as soon as it came in. Entirely different theory from the theory in which it obtained the conviction. The state disagrees, your honor. The state never offered a theory on how the crash occurred at trial. The state at the original trial went along with the evidence that it was a high-speed crash. And the evidence was pretty clear, if you believe it. So, for example, the passenger in the car who testified against the driver went flying. The two pedestrians who were walking with the victim said it came as a high speed. Well, on habeas, all of a sudden the state says, no, it was about 15 miles an hour. So it was an entirely inconsistent theory. Well, the state disagrees, your honor. The state... The essential part of the state's theory at trial was that a crash reconstruction could not be completed because there were insufficient variables to complete that reconstruction. And as Trooper Stodge testified at trial, we cannot even make a speed estimate. We can't... Well, you know, if that's true, why is it ineffective assistance of counsel not to have produced it? Why is it ineffective... Well, your theory is that there was effective assistance of counsel, but... Yeah, so what Sreano did here is she produced an expert to offer an opinion to positively exclude Garding's vehicle. The only piece of evidence that the state ever connected to Garding's vehicle was her bumper. So Sreano reasonably got an expert to say that her bumper could be excluded. Thus, this vehicle can be excluded. So it doesn't raise a reasonable probability of a different outcome here, Judge, that if the state would have... If Garding would have presented a crash reconstruction expert to exclude her vehicle when another expert already did and she was already convicted, that it would have raised a reasonable probability of a different outcome. What would have happened was exactly what happened at the PCR proceedings. Garding presented an expert who offered assumed variables, and the state presented a contrary expert, which actually more conformed with the injuries on Parsons because a low-speed crash would produce less leg injuries. Was there any damage to her vehicle? No, Your Honor. None, yeah. No. But it was reasonable for her to pursue that bumper theory because that's... And keeping in mind that the state never pursued an accident reconstructionist whatsoever, so what was the triggering event looking at the time of trial for Garding's counsel to be able to decide to come up with an accident reconstructionist when the state didn't present one at all? Is it true that on the eve of trial, she was offered a deal that said if you admit guilt, we'll give you no jail time, and she rejected it? I'm not aware of the plea negotiations in this case, Your Honor, and I apologize. Okay. But that's well reported in the evidence that I've seen outside the record, but you're not in a position to confirm or deny? I'm not in a position, no, Your Honor. Oh. Okay. So Strickland tells us the courts judging an ineffectuous claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed at the time of counsel's conduct. So what were the facts that happened at the time of counsel's conduct? First, there were insufficient variables to even complete an accident reconstruction, so Striano reasonably relied on cross-examination of the trooper's theories, crash test theories, to show that they did not know how this accident occurred. This was reasonable professional assistance. Richter tells us that it is just as reasonable to rely on cross-examination rather than seeking evidence that exonerates, particularly when counsel is a capable and active advocate. Now, the Montana Supreme Court detailed all the facts of her capable advocacy and said, you know, to every point that the state made, she made a counterpoint. And so it was not ineffective assistance on this record to what she did. And she secured an excerpt. She secured the non-speculative expert, the medical expert, who could say this bumper excludes Garding's vehicle. She didn't engage in the esoterics of crash reconstruction, Your Honor. Is it true that the only two recipient witnesses that provided inculpatory evidence are Cornell and Bordeaux? Well, yes. And Cornell and Bordeaux are doing, in both cases, they're doing in order to get favorable treatment in their own criminal cases. Is that true? Well, as to Bordeaux, the— Is that true, yes or no? Well, no. I mean, Your Honor, Cornell, the state was forthright that Cornell had tried to get a deal, but the state did not provide him a deal. Now, as to Bordeaux, the jury was provided the plea agreement, the judgment. So I think the answer is yes. That is to say both of them were seeking favorable treatment in unrelated criminal matters in return for their testimony. Well, what— I think that's a yes. Well, yes. What Bordeaux was saying was that what happened there was he was obligated to testify truthfully in any case. Well, I understand that. But I think your answer is yes, they were both seeking favorable treatment in unrelated criminal matters in return for their testimony. Now, the testimony might or might not have been true, but I'm asking you, were they seeking favorable treatment in their criminal proceedings? They were, Your Honor. And the Montana Supreme Court recognizes this fact in its opinion, but that does not make its opinion under Strickland unreasonable. Here's where I'm going. I think you may win on what you've got here in front of us, but I also think you've got an innocent person unjustly convicted, miscarriage of justice, even though there may have been effective assistance of counsel. And, Your Honor, there is no newly discovered evidence claim in front of this court. No, I get that. Thank you. But you may be pursuing a course that is going to result in a reinstitution of a conviction of an innocent person. I respectfully disagree, Your Honor, and so did the state courts in Montana. She was sentenced to 20 years, is that right? Yes. I'm sorry, 40 years. Forty years. Yes, and so at a quarter of that time, she was released on parole. So she served 10 years. Correct. Okay. And so when you're trying her again, she's already served the time. You're just trying to, if you tried her again, the theory would be just to reinstate the conviction or for a supervised release? Well, Your Honor, the state is pursuing this claim to protect the finality of the convictions of all defendants. I think what's going on here is we have an erroneous decision from the federal district court on ineffective assistance of counsel. That's what we're disputing. We're not going beyond that, Your Honor. If we were to reverse the district court, is she going back to prison? I can't answer that, Your Honor. Why not? So I represent the state's attorney's office. That's a matter of a separate county attorney, what they would like to pursue. I think you can answer the question, or at least you should be able to. The question is the circumstances under which she was released from prison. Had she served her time, went to account for good time and so on, or was she released as a result of Judge Christensen's decision? Well, she was released on parole, and then she was subject to her conditions of parole. That's what I mean. Yes. So if we were to reverse the district court and you were then to reinstate the conviction that you obtained, she's out on parole? Well, yes, Your Honor. Then it just snaps back, exactly. And I'm sorry for not clarifying that or understanding that, but yes. But she's not going back to prison unless she violates her terms of parole. Exactly. She would be on parole. Right now she's not on parole. She's not on parole. She's subject to pretrial conditions. So just to lay this out for you. What's the terms of the parole? They're standard conditions, I believe. How long? I believe maybe for the term of her sentence. So it's another 20-plus years. It could be, yes. Is there a trial date set for the retrial? Not at this moment. So there's just been a status hearing in June, and there's another status hearing set for December. So in any event, retrial is going to proceed if the state loses here. But if the state wins, it snaps back, and she's subject to parole conditions. Thank you, Your Honor. Can I ask on the mootness question, you mentioned what was it, the Calderon v. Moore case? Yes. Do you think that preclusively finds this, or is there something? I guess I'm wondering if we need to clarify the law on this issue. Absolutely not, Your Honor. I think that Calderon v. Moore says that when the state pursues a merits appeal of the grant of a habeas petition, it can engage in going towards retrial at the same time. As long as retrial proceedings are not completed, therefore as long as a new conviction or judgment doesn't replace the original judgment, the state's appeal is not moot. So if your position was, well, we would not intend to retry her, that would moot it out? I'm not sure I understand what you're saying. Well, if the state said, look, we think that this conviction is proper, so we want to defend that, but we have no intention of retrying her because she already served her time. So just as a matter of efficiency, we're not going to retry her. Would that take this out of Calderon v. Moore? It would, but the state is pursuing retrial proceedings. She's been rearranged. I know, but that's why I'm asking because it just might give a little flavor to what's happening here because if you came in and said and adopted Judge Fletcher's position that he's been questioning you about, about why would you retry someone that it appears might be innocent, if you did that, it might actually moot out this appeal. Well, if retrial reached a point where relief can no longer be granted on this appeal. So it depends on how long this appeal takes. What you still have, I mean, what Calderon doesn't address is whether the state still has an inherent interest in preserving the conviction itself, and could that be grounds to hold that it's not moot? Even if the state came in and said, look, we're just not going to, we have no intention of retrying her. We're just here to vindicate the original conviction. If we can't vindicate it, it's over. If the state said that, would this case be moot? Well, I think what Calderon says is that the state's interest is in not having to pursue retrial. I understand that. That's why I'm asking the way I am. I'm wondering if separately. So if it's a different scenario. If the different scenario is we just want to vindicate the original conviction, would we say, no, that's not enough, it's moot, because she's out? Because she's been released. Yeah, because she's been released. There's no. . . Yeah, and I mean, so she's not being, she's been released on pretrial conditions right now, and I'm sorry if I'm not getting exactly your point. I think the answer is that even in that circumstance, it's not moot, because if we allow you to keep the conviction, you get to keep her on parole, and she's got conditions of parole. So there's something real at stake. It's not incarceration, but it's conditions of parole, which are constraining. And in fact, depending on what she does, you may put her back in jail again. Thank you, Your Honor. I see my time is almost up, so I will reserve the remainder for rebuttal. Thank you so much. Good morning, and may it please the Court. Lars Phillips on behalf of Katie Garding, petitioner, appellee, and cross-appellant. Jurisdiction presents two reasons why jurisdiction precludes this Court's review of this case. You're mumbling a little bit. I'm hard of hearing. Sorry, sir. I'll try to speak more clearly. Okay. First, my colleague on the other side stood up and he said, I represent someone else. I represent the Montana Department of Corrections, and the decision as to whether or not this case goes forward, that's for a different entity to consider. Respectfully, Your Honor, that demonstrates there are no direct consequences of this Court's order. And we know that... What was different in Calderon versus Moore? Sure, Your Honor. Several things. First is a pre-AEDPA capital case decided on certiorari papers. Second, the petitioner, based on the record as I read it, was never released from custody. Third, the federal court in Calderon vacated the conviction not a state court, as here. So it's reasonable to say that the federal court could then require that federal district court to reinstate the conviction. And I think... In Calderon, it says the State of California has granted petitioner Charles Edward Moore Jr. a new trial. So there was a state court order. If we reverse the district court and set aside its order, then it's just gone. And the state court then, presumably, they will ask for reinstatement of the conviction. And there's no jeopardy bar that would prevent that, so it would get reentered. I don't understand how you could say it's moved. I disagree with the idea, with the snapback analysis, that now the state district court can just reimpose that conviction. And let me tell you why, Your Honor. First, I think we have to look through to state law. We know that under Montana Code, annotated 46-16-702, that it allows a district court to grant a new trial in the interest of justice. But my research reveals no similar ability of the state district court to reimpose a conviction that has been vacated. And there's probably three reasons for that, although I admit in state law the Montana Supreme Court has not reached that issue. But you'll all sort that out in state court. If it's unclear at this point that we cannot, if there is a question whether we could provide any relief, then it's not moved. It has to be just not mostly dead. It has to be all dead to be moved. Your Honor, I submit that three constitutional provisions of the Montana Constitution make this very clear, that this conviction cannot snap into place. The first is Article II, Section 25, and you have to vacate a conviction before a new trial. The second is upon termination of state supervision for any offense against the state, full rights are restored, and that's Article II, Section 28. And every petitioner, every person in Montana, by the Constitution, Article II, Section 26, has the right to a jury trial. So I think as a matter of our Constitution, Your Honor, there is no ability for the state to simply... I have to say I would be astounded if the Montana court would not reinstate the conviction because it was vacated under duress. Your Honor, I... I may be wrong, but I would be astounded if I'm wrong, and I agree with Judge Collins. Even if it's an arguable question, I don't think that makes it moot. Your Honor, I respectfully submit that the question here is, can there be direct consequences? And, you know, this court, we understand from cases... And that's what I was... Are you raising a different argument that we can't actually provide the relief? We can provide something that may ultimately lead to relief. Is that your argument? Yes, Your Honor. That's the first part of our jurisdictional argument is that you have to be able to give direct consequences, something that affects the rights of the parties before the court. And the Montana Department of Corrections has no rights. As my colleague mentioned, it's the district attorney. For you, it's the causal chain more than the possible... I mean, you can't cite us a Montana Supreme Court case that says, hey, we will never reinstate that here. Yes, Your Honor. So it's clearly a question open. So from that perspective, it would be moot. But you just think that because we can't directly reach down that this seems a bit of a stretch as well. Because, I mean, isn't the presumption that the state courts would honor the vacation of the habeas grant? Your Honor, I believe that Article 3 demands a little bit more than expectation. I think that Article 3 says that we have to have direct consequences available to the parties here. And I think that there's two decisions from this circuit issued this year that confirm this result. What are those? Arcega v. Frondheim at 65 F. 4th 473. That's Walls v. Laney. I don't have a reporter number for it, but I have the docket number 22-35682. And in both of those cases, this circuit dismissed the appeal because the state criminal judgment had been vacated, which leads to this second jurisdictional argument that we presented to this court, and that's a statutory argument under EDPA. We contend that 22-54A, as soon as that state conviction is vacated, habeas jurisdiction is gone. We understand from cases like Inouye Medley and Fabian Noya that this court's power acts on the petitioner. It acts on the custody. The problem with your argument, it seems to me, is it would preclude, as I understand it, appellate review any time that a federal district court would grant habeas because if they grant habeas, then it's going to be moot. At least, yeah, then we wouldn't have the ability to review it because we can't direct the state court. We can only direct, we can only reverse the federal district court. That seems incredibly counterintuitive. Your Honor, I think that there are so many arrows in the state's quiver here to avoid that result. I do not think that it creates a rule that every grant of habeas is unreviewable. For example, the state could partake in an expedited appeal. The state could immediately. Before the state court. Yes, Your Honor. Because here what we have is on April 19th, two days before the conditional writ was set to execute, the county attorney's office first moves in and moves to vacate this conviction in the state district court. Then next morning, April 20th, the Montana Department of Corrections. You think that they hold the keys to the kingdom because they can just take the position of, okay, fine, the federal district court. But that in itself is bad because then your client, assuming would have been in jail, detained at the time, wouldn't be able to get the benefit during the appeal. Wouldn't you be going in and saying, if your client were in jail, as soon as the district court issued the order, wouldn't you be going in saying, this needs to be vacated, she needs to be released? Your Honor, I think that we would make those arguments. Of course, we would try to keep the release from custody during the pendency of the appeal. I believe there's a separate statute, but their excitation escapes me right now. But I would also note that the state, there's a few more options for the state here. I mean, they could have expedited this appeal under the district court's emergency rules, but even more so. So you want every single grant of habeas by a district court to be expedited to us? Your Honor, this case was expedited. I'm not saying every case has to be. I'm saying that where the district court, like here, presented an approximately 30-day conditional writ window, maybe it does make sense to have that case be expedited. Maybe this provides guidance to federal district courts in the future that you should give a little bit more time than 30 days. But here, there's a separate statute in the Habeas and Ed Puts, 28 U.S.C. 2251, that actually allows the Montana Department of Corrections to ask the federal district court to stay the state court proceedings, to preserve jurisdiction. And I think that the Seven Circus decision in Brown v. Vannahill is helpful here. I mean, certainly when you go, under these circumstances we have in this case, should the Department of Corrections have come in immediately after the conditional warrant was entered and said, Your Honor, we need to stay this case. We need to stay execution of this judgment. If we don't, this case is going to be moot. We know that you can do that. That's a good reason to do it so we can proceed to the merits. So do you have any case law? I take it you don't have any Ninth Circuit case law that adopts your position. I mean, I understand you're citing what you think are some analogous mootness cases. Has any court actually said outside of the Ninth Circuit, an appellate court, said it's moot because we can't actually order the state court directly? Yes, Your Honor. That's the Seventh Circuit in Brown v. Vannahill. That's that case we cited too. And although I'm less familiar with them, I believe we cited two cases like Edelman from the Sixth Circuit. I believe we cited a case from the Tenth. And those are all this exact scenario? Well, Brown v. Vannahill is this exact scenario. The Edelman and cases similar to that are somewhat dissimilar, but that's the best that we've got. Okay. Your Honor, we also respectfully request here that Munsingware vicature does not apply. And this is a point that I don't believe has been fully addressed in the case going to SCOTUS becomes moot on appeal, it's either reversed or vacated with instructions to dismiss. And the purpose, as I understand it, is to prevent a judgment unreviewable because of mootness from spawning legal consequences. I think Munsingware is a civil case. I don't think it applies to habeas. Your Honor, respectfully, this circuit has applied Munsingware in habeas cases. Okay. And in a footnote, and I believe our SIGA case we referenced, and I think that that's wrong. But if Munsingware applies in habeas cases and goes moot, and we then vacate the habeas, then what happens? I mean, it's not set aside? Your Honor, I'm not sure. I think that's why Munsingware doesn't apply here. Well, it's why it's not moot. Because it would have a consequence if Munsingware were the case. That shows it's not moot. I disagree, Your Honor. I think that it still wouldn't have a consequence because it still doesn't force the state court to do anything. But at green lights, there's no obstacle. And if the state, in sorting out state law, and you've got arguments about they decide, well, we're going to go ahead and reinstate it, they would be able to do that because the order is gone. And the fact that the Munsingware would change things shows it just reconfirms it's not moot. You know, we've been mucking around with the procedure for a long time. Do you want to talk about ineffective assistance of counsel? I do, Your Honor. We respectfully request that this court affirm the judgment of the fellow district court. We think that there are several reasons why, even under AEDPA's doubly deferential standard of review, that Katie Misgarding received ineffective assistance of counsel in this case. First, it was objectively unreasonable for the state district court to wipe away the duty to make reasonable investigations in this case. And it was also objectively unreasonable for the state district court to wipe away the requirement that a reasonable decision be made to not investigate. Neither of those things are present here. But there was investigation. What wasn't done was to present a full-fledged professional accident reconstruction scenario. Yes, Your Honor. So there was some investigation. There was not, Your Honor. The record suggests that it was an oversight. Ms. Striano testified that she did not consider the use of an accident reconstruction specialist at all. Yeah, I understand that. But that doesn't mean there was no investigation whatsoever. In an accident reconstruction specialist, Your Honor, I respectfully disagree. I think that if she didn't consider the use of one, then how could she have investigated the use of one? I see. So you've got a narrow definition of what was to be investigated. Yes, Your Honor. I see. Okay. And we also say that it was unreasonable, even under AEDPA's terms, for the state district court to decide that counsel could have made a reasonable strategy decision in this case. We look at a case like Hinton v. Alabama, which I think provides a good analogy there. In that case, defense counsel is under the mistaken impression that he could only get so much money to hire an expert. It turns out it wasn't true. It turns out that if he had gone and looked at Alabama law, he would have figured that out. So what was the financing, if you know, that was available for accident reconstruction? What were the conditions under which the defense was being carried out? Who was paying for it? In Hinton? No, no, in this case. In this case. In this case, I do not know that, Your Honor. The record does not suggest any restriction on defense counsel to hire monetary restriction to hire an accident reconstruction specialist. We know that she had previously hired one in a previous case for her office. We know that that expert was Rocheford, and Rocheford was one of the experts that we presented in Habeas' case. So in a sense, we know what trial counsel would have discovered had she done a reasonable investigation, had she called the guy she had previously hired. If she had called that guy, he would have said, there's no way that Katie Garding's Blazer could have been the striking vehicle. And so when we move through these unreasonable applications of Strickland, and now we're into de novo review, and I think that the district court made a... Why are we under de novo review? Well, Your Honor, circuit court precedent makes clear that once the state district court or state court has made an unreasonable application of clearly established federal law, it satisfies the terms of AEDPA, and then now you de novo review. Okay, so why is what the state court do unreasonable? Well, for those three reasons I just explained, Your Honor. Wiped away Strickland's requirement that you make a reasonable investigation. Wiped away Strickland's requirement that you make a reasonable decision not to investigate. Failed to investigate exculpatory evidence. We have several of these reasons, Your Honor. Okay, no, I see the argument. I heard you say that. Fine. Okay. And so as we move forward, Your Honor, we are looking into prejudice, and we also argue that the state court was unreasonable for a very simple reason. The last reasoned decision in the state court in this case is the state trial court. And the state trial court said, I have looked at the expert testimony of the state, the PCR, Trooper Smart, the new theory the state came up with. I've compared that to Garding's new experts, and I've found that the state's theory is more credible. Well, there's two things about that. First, it shows that all of these reports, all this evidence, was in the record. And I think that argument in the appellant's side can be disregarded. But second, he didn't compare that prejudice evidence to the totality of the circumstances, which is what Strickland requires. The district court wasn't supposed to weigh the two competing theories in post-conviction relief and decide which one was better. He was supposed to weigh the new error, the failure to consult and call an accident and reconstruction specialist, and then review that in light of the totality of the circumstances. And had he done that, he would have seen all of the problems with Trooper Smart's report, which we point out in our brief. He would have seen that the state changed its theory in post-conviction, and he would have necessarily had to have found that there was a reasonable likelihood of a different result. Your Honor, just in... I see that my time is somewhat limited, and I would like to make two further points about the remainder of our case. First, as to our Brady claims, both claims involve the state's testifying expert, Dr. Gary Dale. Dr. Dale had an X-ray in his possession, and he had 2,000 photographs of a vehicle versus pedestrian crash in his possession. Neither of those documents... None of that evidence was provided to the defense. The state court, we argue, was unreasonable in wiping that away, because what they said was, first, well, the prosecutor was unaware. Frankly, Kyles v. Whitley, Brady itself demands more than that. That evidence is imputed to the state. And we also believe that it was wrong to say that this evidence was not suppressed. The state Supreme Court said, well, they talked about the X-rays, for example, at trial, and so there's no suppression there. Respectfully, we disagree with that. What is clear from the record is that when it mattered, when disclosure mattered pre-trial, Dr. Dale described the X-rays in a different way than how he described them at trial, and that was necessary, that way that it brought into the prejudice issue. Lastly, Your Honor, I want to highlight our cumulative error claim. I think with respect to this court's ultimate disposition in this case, if this court reverses the federal district court on IFC and if it agrees with the district court on Brady, the answer is still not simple reversal. The answer is remand to consider our cumulative error claim. The district court in this record has said he specifically did not consider it because he granted relief on IFC. That's a claim that we have pled and that has not been decided. And so that should be, if this case isn't moot, the ultimate decision in this case. Thank you, Your Honors. Thank you. We'll hear rebuttal. Thank you, Your Honors. I would like to briefly address the cumulative error claim. That claim is procedurally barred as a procedurally defaulted claim as it was never raised in state court. As to the Brady matter as to whether evidence was suppressed, there's no evidence in the record that the prosecution ever possessed the X-rays or the 2005 photos and suppressed them. The crime lab is a neutral, independent agency. Each party has to get a court order from the district court to get materials from the crime lab. The problem with Striano was that she made a request for items from the Parsons file, from the autopsy, but she didn't make a request from Dr. Dale's file, and she never specifically asked for the X-rays in any event. So the idea that the state suppressed it is not true. Did the state ever have that evidence in its possession? No, it did not, and there's no record evidence of that. Can I ask? Sorry to keep going back to the mootness. I find the argument for mootness pretty incredible here, and yet I just reread Brown. The Seventh Circuit seems to have adopted it. Are we going to have to expressly disagree with Brown? I don't understand how they reached it. They seem to have completely ignored Moore. Your Honor, I looked into that, and the parties never briefed Moore versus Calderon in their motions to dismiss and various responses. So it could have been an oversight. But also, you know, Brown versus Vanden Heuvel doesn't say under what conditions the conviction was vacated. It doesn't seem to explain that. Do you think there might be a way to distinguish it? I believe so, yes, Your Honor. But also, you know, with the guiding principle of Calderon versus Moore, I don't even know if that's necessary. And keeping in mind, in AEDPA, this court is reviewing the decisions of the— You would agree—let me ask it this way. If Brown were a Ninth Circuit decision, would you agree that we would be bound by it and that we would have to hold that this case is moot? Or you'd still be arguing there's a distinction? Oh, yes, absolutely. What are the distinct— If Brown were binding on us, how would you argue that this case were still not moot? Well, see, Brown focuses on the vacator of the conviction, but Calderon versus Moore focuses on the state's ability to— Yes, absolutely, yes. So why wouldn't it fall under Brown then? Well, in Calderon versus Moore, the conviction was vacated too. This is a necessary prerequisite to proceed with retrial. Okay, but then you're just arguing that Brown just got it wrong. Yes. But Calderon was never released from custody. Well, no, but Garding was released from custody pursuant to the pretrial conditions after she was rearranged on the information. So, I mean, the idea that she's out just because on that has nothing to do with the conditional writ. We need to go back to the language of the conditional writ here. What the district court ordered was that the state must release Garding within 30 days and forever lose the right to retrial, or the state had to proceed with retrial proceedings and vacate the conviction. That was the order of the federal district court. So you think that's what distinguishes this from Brown? Brown had a conditional writ and here was a direct grant. It could be, yes, Your Honor. So, I mean, the state was placed into an impossibility here, but also, you know, to your point. You sought a stay, right, from the district court? We did seek a stay, yes, Your Honor, but to opposing counsel's point, neither the failure to seek a stay or, you know, it doesn't matter. I agree it shouldn't be relevant. Yeah. But I think your argument against mootness is, number one, we did it under duress. Correct. And number two, because we did it under duress, if we were to reverse the district court, we could get it reinstated. Yes, Your Honor. And that might be enough to distinguish Brown. Yes, Your Honor. Okay. Thank you so much. If there are no other questions, I will submit. Okay. Thank you. Thank you. Thank you to both counsel for your arguments in this case. The case is now submitted and that concludes our arguments for the week. Thank you.
judges: FLETCHER, NELSON, COLLINS